## American Savings Life Insurance Company et al. v. Riplinger.

(Decided May 2, 1933.)

WOODWARD, HAMILTON & HOBSON for appellants.

ROBERT G. WULF and BECKHAM OVERSTREET for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This appeal requires a review of the trial of an action for personal injury inflicted by the operation of an automobile on a street in the city of Louisville, Ky., in which a judgment was rendered in favor of Charles Riplinger against Andrew J. Owens and the American Savings Life Insurance Company for $1,050.

Andrew J. Owens was a solicitor, or agent, regularly licensed, and engaged in selling insurance, on commission, for the American Savings Life Insurance Company, a foreign corporation, engaged in business in this city. At the time Riplinger suffered his injury, Owens was traveling on the street in an automobile owned by his wife, from the operation of which Riplinger was injured. Owens at the time was a licensed agent of the American Savings Life Insurance Company. The license was issued by the insurance commissioner of Kentucky. The license recites that Owens "is hereby licensed to transact authorized business of this company in the said commonwealth." It fixed the status of Owens as the agent of the insurance company as required by the commonwealth. Section 633, Ky. Statutes. The statute authorizes its issuance, and prescribes

a penalty for engaging in business without it. It is not the intendment or purpose of this section, or the license issued thereunder, to deal with, or fix, the liability of the insurance company to a member of the traveling public for an injury resulting from the negligence of a licensee while operating an automobile on a street or highway. The proof of the license is pertinent only for the purpose of showing a relationship between the licensee and the insurance company. It is not, except to that extent, an aid in determining the liability of the company to Riplinger. Its liability must be determined by the contractual relations existing at the time between Owens and the insurance company as it is fixed by the contract of employment.

The doctrine of liability of the master for the wrongful acts of the servant or agent is predicated upon the maxims "respondeat superior" and "qua facit per alium, facit per se." In fact, it rests upon the doctrine of agency. 18 R. C. L. sec. 247. The difference between an agent and a servant is aptly stated in a note at the bottom of page 423 of 2 C. J., wherein it is stated:

"Agency properly speaking, relates to commercial or business transactions, while service has reference to actions upon or concerning things. Service deals with matters of manual or mechanical execution. An agent is the more direct representative of the master, and clothed with higher powers and broader discretion than a servant. Mechem, Agency, secs. 1, 2. The terms 'agent' and 'servant' are so frequently used interchangeably in the adjudications that the reader is apt to conclude they mean the same thing. We think however that the history of the law bearing on the subject shows that there is a difference between them. Agency, in its legal sense always imports commercial dealings between two parties by and through the medium of another. An agent negotiates or treats with third parties in commercial matters for another." Kingan & Co. v. Silvers, 13 Ind. App. 80, 37 N. E. 413, 416.

"The words 'agent' and 'servant' in a general sense both apply to persons in the service of another. Turner v. Cross, 83 Tex. 218, 18 S. W. 578,

15 L. R. A. 262. The words 'agent' and 'servant' are not wholly synonymous; both however relate to voluntary action under employment, and each expresses the idea of service. The service performable by a servant for his employer may be inferior in degree to work done by an agent for his principal. A servant is a worker for another under an express or implied employment; so also is an 'agent' only he works, not only for, but in the place of, his principal. People v. Treadwell, 69 Cal. 226; 10 P. 502.''

A servant is a person subject to the command of his master as to the manner in which he shall do his work, and the master is the one who not only prescribes the work but directs, or may direct, the manner of doing the work. Bowen v. Gradison Const. Co., 236 Ky. 270, 32 S. W. (2d) 1014; Jarvis v. Wallace, 139 Va. 171, 123 S. E. 374. A master within the doctrine of respondeat superior is the one who cannot only order the work, but also how it shall be done. Carter v. King County, 120 Wash. 536, 208 P. 5. The doctrine applies only where the relationship of master and servant exists at the time and in respect to the thing causing the injury, and from which it arose (Tilburne v. Burton, 86 Cal. App. 627, 261 P. 334; Martin v. Greensboro-Fayetteville Bus Line, 197 N. C. 720, 150 S. E. 501; Kennedy v. Wolf, 221 Ky. 111, 298 S. W. 188), and then only when the one sought to be charged has some right in some way to control the conduct of the party having caused the injury (Trachtenberg v. Castillo [Tex. Civ. App.] 257 S. W. 657).

In considering and determining the liability of the company for the wrongful acts of Owens, the test recognized by every system of jurisprudence, apparently, is whether there was authority expressed or implied for doing the act which caused Riplinger's injury. Section 252 of 18 R. C. L.; Cincinnati, N. O. & T. P. R. Co. v. Rue, 142 Ky. 694, 134 S. W. 1144, 34 L. R. A. (N. S.) 200; Reynolds' Adm'r v. Black Mountain Corp., 240 Ky. 673, 42 S. W. (2d) 916. If Owens had neither expressed nor implied authority for doing the act, but represented the company only as to the result of the work, and not as to the means whereby it was to be accomplished, he was and is an independent contractor, for whose wrongdoing the company is not liable. Bowen v. Gradison

Construction Company, 236 Ky. 270, 32 S. W. (2d) 1014; George v. Chaplin, 99 Cal. App. 709, 279 P. 485; Gorman v. A. R. Jackson Kansas City Showcase Works Co. (Mo. App.) 19 S. W. (2d) 559; Producers' Lumber Co. v. Butler, 87 Okl. 172, 209 P. 738; Tankersley v. Webster, 116 Okl. 208, 243 P. 745; See v. Leidecker, 152 Ky. 724, 154 S. W. 10; Louisville & N. R. Co. v. Smith's Adm'r, 134 Ky. 47, 119 S. W. 241.

Whether the relationship of Owens was one of employment of an independent contractor is not to be determined by a general rule of law, but by the facts in the case. Marsh v. Beraldi, 260 Mass. 225, 157 N. E. 347. To determine the liability of the insurance company to Riplinger we are required to apply general principles to the proven facts.

At the time Riplinger was injured, William B. Bannon had been induced by Owens to agree to take an assignment of a policy issued by the company which Owens had sold for it to Jillson Smith. The paper evidencing the assignment was sent by the company to Owens, and it and the policy itself were to be delivered by Owens on the payment of the premium by Bannon. He was returning to his home for his dinner and for the purpose of procuring the assignment and the policy which he had previously left at his home, with the intention of having Bannon, in the afternoon, to accept the assignment and pay the premium, when he would deliver it to him and the policy to Smith, and, while making this trip in the automobile of his wife, Riplinger was injured by the automobile which Owens was himself operating. The premium on the policy was $200. Owens' commission was $120, and the company's portion of it was $80, which he intended to collect and remit to it. It was the custom, if not the contract, of Owens and the company for him to collect the premium and remit the company's portion. The license issued to him by the insurance commissioner is sufficient to show there existed at that time a relationship between him and the insurance company. The relationship then existing between him and the company, which fixes the liability of the insurance company to Riplinger, must be determined by the evidence adduced thereon. The contract between Owens and the insurance company was approved April 15, 1931. If it was reduced to writing, it does not appear in the record. It is admitted that

14

the contract authorized him to sell, on commission, insurance for the company. It provided that he should not represent any other company during the life of the contract.The company reserved the right to terminate the contract or to discharge Owens. In the selling of insurance under the authority of his contract with the company, Owens could go or come in any manner he chose. He did not have to drive an automobile in order to comply with his contract. He was not required by the company to do so. His mode or means of travel in the selling of insurance, whether on foot, by street car, or automobile, or other vehicle, was a matter left entirely to Owens. He was not furnished an automobile by the company. He received no compensation for the use of his wife's automobile, nor for his services, except a commission on each policy he was able to sell. He could go to work at whatever hour he desired and work as he desired, either day or night. The company did not exercise any control over the manner in which he should travel, or as to where he should go or spend his time when selling or not selling insurance. It was left to him entirely as to how or when he would travel or where he would go to sell its policies, but it had the right to hire and fire him. Notwithstanding his contract did not permit him to represent any other company, at the time of Riplinger's injury, he represented more than one other insurance company, but was not engaged in dealing for another on that day. There is no contrariety of evidence as to these facts. Riplinger contends that, in determining the liability of the company, Owens' relationship as licensee and the company's power to discharge him are the determinant factors. To sustain this insistence, Thompson on Negligence, vol. 1, p. 25, secs. 579, 629, and Singer Mfg. Co. v. Rahn, 132 U. S. 518, 10 S. Ct. 175, 33 L. Ed. 410; Messmer v. Bell & Coggeshall Co., 133 Ky. 19, 117 S. W. 346, 19 Ann. Cas. 1; Williams v. National Cash Register Co., 157 Ky. 836, 164 S. W. 112; Id., 161 Ky. 550, 171 S. W. 162; Foreman v. Western Union Tel. Co., 228 Ky. 300, 14 S. W. (2d) 1079, and other cases, are presented. Riplinger urgently insists that Singer Mfg. Co. v. Rahn, 132 U. S. 518, 10 S. Ct. 175, 33 L. Ed. 440, is controlling and conclusive of the present case.

In the Singer Mfg. Co. Case the facts were: Corbett entered into a "Canvasser's Salary and Commis-

sion Contract" with the Singer Manufacturing Company. A commission was to be paid to him. He agreed to give his whole time and services to the business of the company; and the company reserved to itself the right of prescribing and regulating, not only what business he should do, but the manner in which he should do it; and might, if it saw fit, instruct him what route to take, or even at what speed to, drive.

In Williams v. National Cash Register Co. a recovery was sought for an injury resulting from the negligent operation of an automobile owned by a sales agent of the defendant and driven by an employee of the agent, and it was shown that the contract under which sales were made to customers provided for ordinary repairs to cash registers within two years, and for payment for extraordinary repairs during that period and thereafter. It was held that the question whether the driver of the car was engaged in the defendant's business at the time of the accident should have been submitted to the jury; there being testimony that the car was being used to deliver a cash register, but the evidence being conflicting whether repairs to a register had been made under a contract of sale or whether they had been made under a separate contract with the sales agent and were paid for. When the case was before the court the second time (161 Ky. 550, 171 S. W. 162), we held the first opinion in the case was conclusive on the question whether the case was properly submitted to the jury.

The facts in the present case differentiate it and Singer Mfg. Co. v. Rahn, and Williams v. National Cash Register Co., in that here the insurance company had no power of control over Owens as to the means, but only as to the result, of his work. The Williams Case is further distinguished from the present one, in that the question of the control of the agent at the time of the occurring of his act which caused the injury of the plaintiff was a controverted fact, and in the present one the facts in this respect, or as to this question, are undisputed.

The other domestic cases and those of courts of foreign jurisdiction cited and relied upon by Riplinger are likewise distinguishable from the present case, in that the facts in those cases are not comparable to those in this one.

The method of payment, the right to discharge, the right to control the result of the work, the fact that the employee is at the time engaged in no other employment, are to be considered in determining whether the right to control the means by which the result is accomplished is also in the employer, but they are subordinate to the latter right, since a person may be a servant or agent as to one part of the undertaking and an independent contractor as to other parts. Khoury v. Edison Electric Illuminating Co., 265 Mass. 236, 164 N. E. 77, 60 A. L. R. 1159.

An accurate definition of an independent contractor is quoted in the case of Shannon v. Western Indemnity Co. (Tex. Com. App.) 257 S. W. 522, 524. We adopt the definition:

"A contractor is any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details. The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished."

See Larson v. American Bridge Co., 40 Wash. 224, 82 P. 294, 111 Am. St. Rep. 904; Barton v. Studebaker Corp., 46 Cal. App. 707, 189 P. 1025.

This general test is universally recognized by the courts and text-writers. Amann v. City of Tacoma (Wash.) 16 P. (2d) 601; Ballard & Ballard Co. v. Lee's Adm'r, 131 Ky. 412, 115 S. W. 732; Messmer v. Bell & Coggeshall Co., 133 Ky. 19, 117 S. W. 346, 19 Ann. Cas. 1; Yellow Poplar Lumber Co. v. Adkins, 221 Ky. 794, 299 S. W. 963; Bowen v. Gradison Construction Co., 236 Ky. 270, 32 S. W. (2d) 1014; Madisonville, H. & E. R. Co. v. Owen, 147 Ky. 1, 143 S. W. 421. Illustrative of this line of cases is the case of a traveling salesman, or solicitor of insurance or a salesman or other person who is his own master in respect to the time he shall devote to the business of the employer, such as soliciting or making sales, using his own automobile or other vehicle, or the vehicle of another, in the pursuit of the employer's business, but the employer is without right to direct the

manner in which he shall control its use. The employer is not liable in such case for damages inflicted by the employee's negligent driving of the car or other vehicle. The following cases contain facts similar to those in the present one: Jackson v. Robinson & Co., 7 Ky. Law Rep. 742 (abstract); Pyyny v. Loose-Wiles Biscuit Company, 253 Mass. 574, 149 N. E. 541; McCarthy v. Souther, 83 N. H. 29, 137 A. 445; Barton v. Studebaker Corp., 46 Cal. App. 707, 189 P. 1025; Aldrich v. Tyler Grocery Co., 206 Ala. 138, 89 So. 289, 17 A. L. R. 617; Woodward-Wanger Co. v. Nelson (Tex. Civ. App.) 11 S. W. (2d) 371; Khoury v. Edison Electric Illuminating Co., 265 Mass. 236, 164 N. E. 77, 60 A. L. R. 1159; Harris v. McNamara, 97 Ala. 181, 12 So. 103; Lookout Mountain Iron Co. v. Lea, 144 Ala. 169, 39 So. 1017; Republic Iron & Steel Co. v. McLaughlin, 200 Ala. 204, 75 So. 962; Premier Motor Mfg. Co. v. Tilford, 61 Ind. App. 164, 111 N. E. 645; James v. Tobin-Sutton Co., 182 Wis. 36, 195 S. W. 848, 29 A. L. R. 457; Andres v. Cox, 223 Mo. App. 1139, 23 S. W. (2d) 1066; Green v. Soule, 145 Cal. 96, 78 P. 337; Western Indemnity Co. v. Pillsbury, 172 Cal. 807, 159 P. 721; Wesolowski v. John Hancock Mutual Life Insurance Co., 308 Pa. 117, 162 A. 166.

The right of control of the means of doing the work, or want of it, is the determinative factor when considering the relationship in such cases, for one who has no right of control in this respect over another ought not to be required to respond in damages for his acts. The uncontroverted facts are, the insurance company had no right of control over the acts of Owens other than as to the result of his work. It is not shown that the company ever knew or had knowledge of the fact that he was using an automobile in the selling of insurance under his contract of employment with it. The work of selling insurance in the city was not such as required the use of an automobile, or any particular vehicle or any vehicle at all. He was a competent and fit person, exercising an independent occupation, not in itself unlawful or attended with danger to others, according to his own methods, without his being subject to control, except as to the result of his work, and the relationship was that of an independent contractor and not that of a servant.

"To hold a master legally responsible for the act

of a servant who is engaged in furthering his master's business and who while doing so negligently uses some instrumentality that carries him from place to place, it must either be proved that the master exercises actual or potential control over that instrumentality, or the use of the instrumentality at the time and place of the act complained of must be of such vital importance in furthering the business of the master that the latter's actual or potential control of it at that time and place may reasonably be inferred." Wesolowski v. John Hancock Mutual Life Ins. Co., 308 Pa. 117, 162 A. 166, 167.

On this theory the company was entitled to a peremptory instruction.

There remains for consideration the propriety of the instructions to the jury as they concern Owens. Their correctness must be determined by the allegations of the petition. It alleges that Owens "had carelessly and negligently driven said automobile onto, against and upon this plaintiff; the plaintiff was thrown down violently and with great force to and upon said street * * * and thereby injured and bruised * * * and was driving said automobile in a grossly careless manner without giving to plaintiff any signal or warning of the approach of his said automobile and without chance or opportunity of avoiding being run onto or over by said automobile." Negligence may be alleged generally. Illinois Cent. R. Co. v. Cash's Adm'x, 221 Ky. 655, 299 S. W. 590. Under such an allegation of negligence the plaintiff may prove any act of negligence of the defendant (Monroe v. Standard Sanitary Mfg. Co., 141 Ky. 549, 133 S. W. 214), but, where he alleges special acts of negligence (Louisville & N. R. Co. v. Kirby, 173 Ky. 399, 191 S. W. 113; Louisville & N. R. Co. v. Mitchell, 162 Ky. 253, 172 S. W. 527; Chesapeake & O. R. Co. v. Cooper, 168 Ky. 137, 181 S. W. 933; Pullman Company v. Pulliam, 187 Ky. 213, 218 S. W. 1005; Louisville & N. R. Co. v. Morgan's Adm'r, 225 Ky. 447, 9 S. W. (2d) 212; Park Circuit & Realty Co. v. Coulter, 233 Ky. 1, 24 S. W. (2d) 942), or where the petition contains a charge of general negligence, coupled with the specific acts of negligence, he is confined to the specific acts (Louisville & N. R. Co. v. Horton, 187 Ky. 617, 219 S. W. 1084). And, where a general allegation of negligence is followed by an explanatory charge of specific acts, the plaintiff is likewise confined to the specific

acts. Manwaring v. Geisler, 191 Ky. 537, 230 S. W. 918, 18 A. L. R. 192; Id., 196 Ky. 110, 244 S. W. 292. In Barksdale's Adm'r v. Southern R. Co., 199 Ky. 592, 251 S. W. 656, the original petition contained allegations of general negligence, but by an amended petition specific acts of negligence were set out. It was held that the amended petition operated to exclude the right of the plaintiff to recover on the ground of general negligence. Our view of the petition is that it contains allegations of general negligence followed by an allegation of a specific act of negligence, and that Riplinger in the introduction of his testimony, and the court in his instructions, should have confined the evidence and the right of recovery to the act of specific negligence charged in the petition.

The instructions authorized a verdict if the jury believed from the evidence Owens failed to operate his automobile at a reasonable rate of speed, to have it under reasonable control, to observe the traffic light, or to exercise ordinary care not to strike plaintiff. The only specific act of negligence set out in the petition is Owens' failure to give Riplinger warning or signal of the approach of his automobile, without any chance or opportunity to avoid being run over. The instructions should be strictly appropriate to the issues, Farmers' National Bank v. Wilkerson, 1 Ky. Law Rep. 351; and only the issues raised by the pleadings should be submitted to the jury, Black Mountain Corporation v. Webb, 228 Ky. 281, 14 S. W. (2d) 1063. The instructions of the court failed to limit the right of Riplinger's recovery to the thing alleged in the petition. Eastham v. Stumbo, 212 Ky. 685, 279 S. W. 1109. Therefore they are erroneous. Knoxville Tinware & Mfg. Co. v. Howard, 219 Ky. 106, 292 S. W. 762.

Other questions, including the question of excessive damages, are presented in briefs, but for the errors in the instructions we have indicated the case must be reversed, and, since they may not occur on another trial, we do not deem it necessary to consider them.

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.